## TABLE OF CONTENTS

Preliminary Statement............................................................................................1

Statement of Facts.................................................................................................4

Point I

DEFENDANT BNSF WAIVED ITS AFFIRMATIVE DEFENSE OF
IMPROPER VENUE UNDER 49 U.S.C. §11706(d)(2)(A) AND THE
BNSF GUIDE BY FAILING TO MAKE ITS RULE 12(b)(3) MOTION
BEFORE ANSWERING, AND BY FAILING TO ASSERT IMPROPER
VENUE AS AN AFFIRMATIVE DEFENSE IN ITS
INITIAL PLEADING.............................................................................................5

Point II

THE CONVENIENCE FACTORS TO BE CONSIDERED UNDER
28 U.S.C. §1404(a), IN THE COURT'S DISCRETION, DO NOT FAVOR
TRANSFER TO CALIFORNIA AND PLAINTIFF'S CHOICE OF
FORUM SHOULD NOT BE DISTURBED...........................................................8

Conclusion............................................................................................................12

HMK/jb GA 7921

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
GREAT AMERICAN INSURANCE
COMPANY OF NEW YORK,                                    ECF CASE

                          Plaintiff,              07 CIV 6421 (PAC)(THK)

          -against-

ADVANCE OCEAN INC., NIPPON YUSEN        PLAINTIFF'S
KAISHA, NYK LINE (NORTH AMERICA)        MEMORANDUM OF
INC., BURLINGTON NORTHERN SANTA FE      LAW IN OPPOSITION
CORPORATION, BNSF RAILWAY COMPANY,      TO DEFENDANTS
THE BURLINGTON NORTHERN AND SANTA       BNSF AND NYK LINES'
FE RAILWAY COMPANY,                     MOTION TO TRANSFER
                                        VENUE
                          Defendants.
-----------------------------------------------------------X

## PRELIMINARY STATEMENT

Plaintiff, Great American Insurance Company of New York, as subrogated

underwriter for Maclean Power Systems, opposes defendants, Burlington

Northern Sante Fe Corporation, BNSF Railway Company, The Burlington

Northern and Santa Fe Railway Company (collectively BNSF), and Nippon

Yusen Kaisha, and NYK Line (North America) Inc.'s (collectively NYK Line),

motion to transfer venue of this cargo damage action to the U.S. District Court

for the Central District of California pursuant to 49 U.S.C. §11706(d)(2)(A)(ii)

and the BNSF Intermodal Rules & Policies Guide[1], or pursuant to 28 U.S.C.

---

[1] Plaintiff disputes that the terms of the BNSF Intermodal Guide are even
enforceable against plaintiff's insured in this action, since there is no evidence that
plaintiff's insured ever agreed to such terms or was ever made aware of their
existence, or was even aware that BNSF was the rail carrier, as they never dealt
directly with BNSF.

§1404(a) for convenience.

Since Defendants' failure to support their version of the facts with an affidavit of personal knowledge, the motion should be denied on that ground alone.

Plaintiff acknowledges the venue provisions applicable to rail carriers set forth in 49 U.S.C. §11706(d)(2)(A)(i)-(iii), but this action is also brought against the ocean carrier, defendants NYK Line, and the NVOCC, defendant Advance Ocean Inc., both of whom maintain offices in New York. (See, Plaintiff's Memorandum of Law in Opposition to Defendant Advance Ocean's Motion to Dismiss; and defendants' Exhibits G and H listing defendant NYK Line's Eastern Regional New York Office in Secaucus, NJ with an address for service of process at 399 Park Ave, New York, NY).

Defendant BNSF did not raise improper venue as an Affirmative Defense in its Answer to the Amended Complaint pursuant to Rule 12(b)(3), F.R.Civ.P., and therefore the waiver provision of Rule 12(h) applies to bar defendant BNSF's request for the relief set forth in the motion pursuant to 49 U.S.C. §11706 and the BNSF Intermodal Rules & Policies Guide, after it had already filed its initial pleading to the Amended Complaint omitting such defense.

Defendant NYK Line did raise improper venue as its Twentieth Affirmative Defense, but is not a rail carrier subject to 49 U.S.C. §11706 nor a beneficiary of BNSF's Intermodal Rules & Policies Guide, and NYK Line does have an office in New York.

2

Moreover, defendants have not met their burden of establishing the propriety of a change of venue for convenience under 28 U.S.C. §1404(a), as defendants' moving papers fail to show that there is any reason why this action should be transferred to California, except to impermissibly shift any perceived inconvenience from defendants onto plaintiff.

Alternatively, if the Court in its discretion determines that this forum is genuinely inconvenient to the parties and witnesses involved in this matter pursuant to 28 U.S.C. §1404(a), then plaintiff submits that the Central District of California is not a more convenient forum than plaintiff's home forum of New York, since the shipment never reached California and defendants do not identify who in California would testify to what.

However, without prejudice to plaintiff's argument that the motion be denied because defendants have not met their burden of establishing the propriety of a change of venue under 28 U.S.C. §1404(a), the Northern District of Illinois better meets the transfer of venue test pursuant to 28 U.S.C. §1404(a), because it is the location of key witnesses, including plaintiff's insured, Maclean Power System, its freight forwarder, Berardino & Associates, NYK Line's Joliet Logistics Park, and plaintiff's surveyor, Mr. Daniel H. Boltz of Inland Surveyors Inc., and Chicago is also the point of origin of the shipment pursuant to 49 U.S.C. §11706(d)(2)(A)(i).

3

STATEMENT OF FACTS

Plaintiff, Great American Insurance Company of New York, is located at 65 Broadway, New York, NY, and chose its home forum to bring this action against the various defendants located in different jurisdictions. New York is where the claim was adjusted, relevant documents gathered, and payment was made under Maclean Power System's insurance policy with plaintiff.

Plaintiff's insured, Maclean Power Systems, is located in Franklin Park, IL 60131, its freight forwarder, Mr. Bob Mohn of Berardino & Associates, is located in Elmhurst, IL 60126, and plaintiff's surveyor, Mr. Daniel H. Boltz of Inland Surveyors Inc. is located in Northfield, IL 60093, all of whom are within the Northern District of Illinois, as is NYK Line's Joliet Logistics Park, which was the point of origin for the transportation of the subject shipment. Maclean hired Berardino & Associates to arrange the transportation from the Chicago area to Thailand. Berardino booked the carriage with Advance which was reputed to be expert in shipments to Thailand. Advance then booked the through carriage with NYK Lines, and NYK Lines booked rail carriage with BNSF to Los Angeles, with no notice to Maclean or Berardino of such booking. No through bills of lading or railway bills were issued by any of the carriers.

Defendants BNSF and NYK Line admit plaintiff's damages arose from a train derailment on July 18, 2006, outside Neosho Rapids, Kansas, before reaching the intended port of loading aboard the ocean vessel in Los Angeles.

Mr. Daniel H. Boltz of Inland Surveyors Inc., on behalf of plaintiff,

4

surveyed the damaged cargo that was returned by defendants from the

derailment site in Kansas to Maclean Power Systems in Franklin Park, IL,

where Mr. Boltz conducted his damage surveys on August 16, 24, and

September 12, 2006, and then attended a meeting at Maclean Power Systems'

office with Ms. Judy Toltzman, Maclean's Transportation Supervisor, and

various other Maclean personnel, and with Mr. James Finch, the insurance

broker with Arthur J. Gallagher Risk Management Services, Inc. on March 29,

2007.  See, Exhibit 6 - Plaintiff's Initial Disclosures Pursuant to Rule 26(a)(1)

with attached Inland Surveyors Inc. Survey Report dated Chicago, IL May 1,

2007, Maclean Power Systems Claim Letter dated August 16, 2006 to Advance

Ocean, Advance Ocean's Booking Confirmation to Berardino & Associates

dated June 12, 2006, and defendant NYK Line's Booking Fax Confirmation to

Advance Ocean dated June 9, 2006.

## ARGUMENT

POINT I:     DEFENDANT  BNSF WAIVED ITS AFFIRMATIVE
             DEFENSE OF IMPROPER VENUE UNDER 49 U.S.C.
             §11706(d)(2)(A) AND THE BNSF GUIDE BY FAILING
             TO MAKE ITS RULE 12(b)(3) MOTION BEFORE
             ANSWERING, AND BY FAILING TO ASSERT
             IMPROPER VENUE AS AN AFFIRMATIVE DEFENSE IN
             ITS INITIAL PLEADING

Rule 12(b), F.R.CIV.P., sets forth how and when a motion to dismiss for

improper venue must be made.

5

"Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion:  . . . (3) improper venue, . . .   A motion making any of these defenses <u>shall be made before pleading</u> if a further pleading is permitted. . . . " [emphasis added]

Rule 12 (h), F.R.Civ.P., further provides:

"(1) A defense of . . . improper venue, . . . is waived (A) if omitted from a motion in the circumstances described in subdivision (g), or (B) if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course."

Here, defendant BNSF did not assert an Affirmative Defense of improper venue under Rule 12(b)(3) in its Answer (Exh. B to moving papers). Nevertheless, defendant BNSF erroneously claims entitlement to the special venue subsection of 49 U.S.C. §11706(d)(2)(A)(ii) at part 1.A. of the Argument section of its Memorandum of Law, and further claims entitlement to the forum selection provision of the BNSF Intermodal Rules & Policies Guide at part 1.B. of the Argument section without ever having affirmatively asserted these provisions as Affirmative Defenses in its initial Answer.

Indeed, plaintiff contends that the restrictive terms in the BNSF Intermodal Guide are not enforceable against the shipper/insured Maclean Power Systems. See, <u>Sompo Japan Ins. Co. v. Union Pacific R. Co.</u>, 2007 AMC 2218 (SDNY 2007) *on remand from* 456 F.3d 54, 75 (2d Cir. 2006) ("The chain

6

of inferences and documents leading to any indication of liability - while not quite to the level of the 'Twelve Days of Christmas,' as Sompo alleges - certainly goes well beyond what is reasonable for a shipper to know when contracting for the shipment of goods." *Id.* 2007 AMC at 2224, copy appended hereto). There is no evidence whatsoever that Maclean was aware of the BNSF Intermodel Guide, or even that BNSF was the rail carrier in this case. BNSF presents no affidavit of personal knowledge to that effect, and the motion must thus be denied on that ground alone.

The language of Rule 12(b) that, "[a] motion making any of these defenses shall be made before pleading," is mandatory language that was ignored by defendant BNSF when making this post-pleading motion for improper venue. Rohrer v. FSI Futures, Inc., 981 F. Supp. 270, 274 (SDNY 1997). These venue provisions were not unknown to defendant BNSF when pleading its case, so no excuse exists for failing to raise this affirmative defense at the earliest possible time. See, Kahn v. National R. R. Passenger Corp., 1986 WL 1456 (SDNY 1986).

Even though defendant NYK Line did assert an Affirmative Defense of improper venue (Exh. C - Twentieth Affirmative Defense, p. 5), NYK Line is not a rail carrier under 49 U.S.C. §11706, and not a beneficiary of the forum clause in BNSF Intermodal Guide (Exh. E - p. 74).

Thus, the grounds supporting defendants' Argument at Point 1A (page 4) and 1B (page 5) of defendants' Memorandum of Law are not available to either

group of defendants herein, and defendants' motion cannot succeed on those grounds. However, that does not preclude this Court from considering a venue transfer based on the convenience of the parties and witnesses and the interests of justice. See, <u>Leif Hoegh & Co. V. Alpha Motor Ways, Inc.</u>, 534 F. Supp. 624, 626 (SDNY 1982).

POINT II:   THE CONVENIENCE  FACTORS TO BE CONSIDERED
            UNDER 28 U.S.C. §1404(a), IN THE COURT'S
            DISCRETION, DO NOT FAVOR TRANSFER TO
            CALIFORNIA AND PLAINTIFF'S CHOICE OF FORUM
            SHOULD NOT BE DISTURBED

The U.S. Supreme Court has made clear that the "plaintiff's choice of forum should rarely be disturbed," and when the choice of forum is plaintiff's home forum, the plaintiff's choice of forum is entitled to even "greater deference." <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235, 241, 255 (1981); <u>Karvelis v. Constellation Lines, S.A.</u>, 608 F. Supp. 966, 971 (SDNY 1985) *aff'd* 806 F.2d 49 (2d Cir. 1986), *cert. denied,* 107 S. Ct. 1891 (1987). As stated by Judge Carter in <u>Complaint of Connecticut Nat. Bank</u>, 687 F. Supp. 111 (SDNY 1988):

> "A party seeking to transfer the action must make a clear
> and convincing showing that the balance of convenience
> weighs heavily in favor of the transferee court. . . .   Where
> the balance is in equipoise, plaintiff's choice will not be
> disturbed. [citations omitted]" *Id.* at 113.

Defendants make no detailed factual showing that California would be anymore convenient to the parties and witnesses than New York, plaintiff's

8

chosen home forum.  Other than stating that BNSF is, "a more convenient

location for BNSF," and that the Central District of California is "a more

convenient location for NYK Line based upon closer proximity of Los Angeles to

NYK Line's Japan headquarters," at point 2A of defendants' Memorandum of

Law, page 7, defendants moving papers are void of any compelling or relevant

reason to transfer this action to California.  As Judge Koeltl stated in Hypoxico,

Inc. v. Colorado Altitude Training, LLC, 2003 U.S.Dist. LEXIS 11862, * 23-24

(SDNY 2003):

> "As for convenience in general, New York is far more
> convenient for the New York-based plaintiff.  While Colorado
> would be more convenient for the defendants, exchanging
> the burdens of inconvenience from one party to the other is
> not a basis for transfer particularly when the plaintiff's
> choice of forum should be given great weight. *Finkielstain v.
> Seidel*, 692 F. Supp. 1497, 1509-10 (SDNY 1988) (denying
> motion to transfer when '[t]he result of a transfer would not
> be to convenience the parties but merely to shift the
> inconvenience from one party to the other.'), *aff'd in part,
> rev'd in part*, 857 F.2d 893 (2d Cir. 1988)."

The party seeking the transfer has the "burden to clearly establish that a

transfer is appropriate and that the motion should be granted." Laumann Mfg.

Corp. v. Castings USA Inc., 913 F. Supp. 712, 720 (EDNY 1996).  The movant

must support the motion with an affidavit containing "detailed factual

statements" explaining why the transferee forum is more convenient, including,

"the potential principal witnesses expected to be called and a general statement

of the substance of their testimony." *Id.* at 720.

9

Defendants omit any mention of potential principal witnesses in California by name, location, and substance of their expected testimony in their moving papers, and thus have failed to carry their burden of showing that the Central District of California is more convenient to the parties and the expected witnesses than the Southern District of New York.

The operative facts that lead to plaintiff's insured's damages was the train derailment in Kansas which gave rise to defendants' liability in this action. However, the facts regarding the cause of the derailment do not present a defense to liability, so what happened in Kansas is not truly relevant to the resolution of this case.

The real issues in this case concern plaintiff's damages and the standing of defendants as responsible parties to plaintiff. Plaintiff's damages flow from its payment to its insured under the insurance policy made in New York, and plaintiff stands in the shoes of its subrogor, Maclean Power Systems, in relation to defendants. The witnesses knowledgeable about the insurance policy, the claim adjustment, and the insurance payment are plaintiff's employees in New York. See, Exhibit 6.

To prove its insured's damages, plaintiff will likely only need the testimony of Ms. Judy Toltzman, Maclean's Transportation Supervisor, who is contractually obliged to plaintiff to cooperate in the subrogation efforts, and so will readily be available in New York for deposition and/or trial testimony. Plaintiff's second necessary witness would be Mr. Daniel H. Boltz of Inland

10

Surveyors Inc., plaintiff's expert and eyewitness to the damage, whose job as a professional cargo surveyor is to travel where and when needed, including to New York to testify in support of this claim.  See, Exhibit 6.

Both of these witnesses would be able to travel from Chicago to New York easily and relatively inexpensively, and would not have to be subpoenaed for trial testimony.  It would certainly be no more convenient to these two witnesses, and certainly more inconvenient to Great American's employees, if required to travel to the Central District of California to give testimony at deposition and/or trial.

The testimony of the freight forwarder, Mr. Bob Mohn of Berardino & Associates in Elmhurst, IL, and the testimony of the NVOCC, defendant Advance Ocean Inc. in California, to establish defendant Advance Ocean's role with regard to this shipment and its relationship to the other parties is largely explained by the booking documents exchanged and Advance Ocean's license as a NVOCC with the Federal Maritime Commission.  (See, companion opposition papers from plaintiff to Advance Ocean's motion to dismiss).

Furthermore, telephone depositions are available under Rule 30(b)(7), F.R.Civ.P., which this writer has often used to depose distant witnesses on limited issues such as involve Mr. Mohn, the freight forwarder, and Advance Ocean, the NVOCC, in this action.

The relevant documents in this case are primarily business records, easily moved from the source to New York and easily authenticated by a

11

custodial witness, such as Ms. Judy Toltzman, Maclean's Transportation
Supervisor.

Defendants have not supported their motion to transfer for convenience
of the parties and witnesses with any compelling or particular showing that
California is any more convenient than New York, or that defendants' perceived
inconvenience of proceeding in New York should be shifted onto plaintiff whose
witnesses would certainly be inconvenienced if required to proceed in
California, where none of the operative facts occurred. See, Hypoxico, *Id.*

Convenience of the witnesses is generally the most important factor in a
§1404(a) analysis. Dwyer v. General Motors Corp., 853 F. Supp. 690 (SDNY
1994); Hernandez v. Graebel Van Lines, 761 F. Supp. 983 (EDNY 1991).

As plaintiff has sued in its home forum, and defendants' proffered
reasons for transfer for convenience are, at best, in mere equipoise to plaintiff's
reasons of convenience for remaining in New York, defendants' motion to
transfer venue must be denied.

## CONCLUSION

THE MOTION TO TRANSFER VENUE BY DEFENDANTS BNSF AND NYK
LINES ON THE GROUNDS OF IMPROPER VENUE PURSUANT TO 49 U.S.C.
§11706 AND/OR THE VENUE PROVISION IN THE QUESTIONABLY
APPLICABLE BNSF INTERMODAL RULES MUST BE DENIED AS WAIVED
UNDER RULE 12(b)(3) AND (h), F.R.CIV.P.; AND DEFENDANTS HAVE FAILED
TO CARRY THEIR HEAVY BURDEN OF ESTABLISHING THE PROPRIETY OF A
CHANGE OF FORUM FOR CONVENIENCE UNDER 28 U.S.C. §1404(a) BY
FAILING TO NAME ANY CALIFORNIA WITNESSES OR EXPLAIN THE
SUBSTANCE OF SUCH EXPECTED TESTIMONY, AND PLAINTIFF'S CHOICE

12

OF ITS HOME FORUM IN NEW YORK MUST NOT BE DISTURBED.

Dated:       February 15, 2008

KINGSLEY, KINGSLEY & CALKINS
Attorneys for Plaintiff

BY:
STEVEN P. CALKINS
91 West Cherry Street
Hicksville, NY 11801
(516) 931-0064

TO:    Landman Corsi Ballaine & Ford, Esqs.
       Attorneys for defendants BNSF and NYK Lines
       120 Broadway, 27th Floor
       New York, NY 10271
       Attn: Ronald E.  Joseph, Esq.

       Junge & Mele, Esqs.
       Attorneys for Defendant Advance Ocean Inc.
       29 Broadway
       New York, NY 10006
       Attn: Armand P. Mele, Esq.

13

## SOMPO JAPAN INS. CO.

*v.*

## UNION PACIFIC RAILROAD COMPANY

United States District Court, Southern District of New York, August 2, 2007
No. 03-Civ. 1604

**AFFREIGHTMENT — 18. Transshipment, Connecting Carrier — 201. Persons Liable, Initial Carrier — BILLS OF LADING — 121. Harter Act and U.S. Carriage of Goods by Sea Act — 124. Clause Paramount — 18. Transshipment — 1951. Limitation of Value — 23. Through. B/L.**

The only issue on remand from the Second Circuit's decision in 2006 AMC 1817 is whether the railroad complied with Carmack and Staggers to limit its liability for the rail carriage of a multi-modal shipment that was found subject to those laws, notwithstanding a Clause Paramount incorporating COGSA. The railroad did not. While not quite rising to the level of the "Twelve Days of Christmas," the chain of inferences and documents leading to any indication of liability goes well beyond what is reasonable for a shipper to know in shipping its goods. Full damages are awarded.

Previous proceedings reported at 2004 AMC 247, 2005 AMC 2814 and 2006 AMC 1817.

David Thomas Maloof (Maloof & Browne, L.L.P.) *for Sompo Japan*
Barry Neil Gutterman (Barry N. Gutterman & Assocs., P.C.) *for Union Pacific*

COLLEEN MCMAHON, D.J.:

Plaintiff Sompo Japan Insurance Company ("Sompo") originally filed a complaint against Defendant Union Pacific Railroad Company ("UP") for damages related to a shipment of tractors from Tokyo, Japan to Swanee, Georgia. The District Court (Duffy, D.J.) granted partial summary judgment in favor of UP, giving effect to the contract for carriage which incorporated by reference the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. app. §§1301-15, and declining to apply the Carmack Amednment (49 U.S.C. §11706) and the Staggers Act (49 U.S.C. §10502(e)), effectively limiting UP's liability to $500 per parcel. *See Sompo Japan Ins. Co. v. Union Pac. R.R. Co.*, 2004 AMC 247, 2003 WL 22510361 (S.D.N.Y. 2003) ("*Sompo I*"). Sompo appealed the *Sompo I* decision to the Second Circuit.

This case comes before this court on remand from the Second Circuit, which reviewed the district court's findings de novo, and resolved the previously unsettled question of what law applies to the United States rail leg of an international multimodal shipment. *See Sompo Japan Ins. Co. v. Union Pac. R.R. Co.*, 2006 AMC 1818, 456 F.3d 54 (2 Cir. 2006) ("*Sompo II*"). The Second Circuit undertook a detailed analysis of COGSA, the

Carmack Amendment, and the Staggers Act to determine which regime should be applied.[1] It concluded that the Carmack Amendment and the Staggers Act should be applied; refused to apply COGSA even though it appeared to be incorporated by reference in a through bill of lading; and reversed and remanded. The mandate stated that the district court was "to consider any other potential arguments that Union Pacific might raise that it complied with the requirements of Carmack and Staggers." *Sompo II*, 2006 AMC at 1845, 456 F.3d at 76.

Sompo renewed its prior motion for partial summary judgment on October 13, 2006. UP filed an opposition and renewed its prior cross-motion for partial summary judgment on November 7, 2006. On July 5, 2007, the parties stipulated that principal amount of damages suffered by the plaintiff was $328,129.32 and agreed that the case could be decided on the papers.

## I. Facts

Except where noted, the material facts are undisputed. Liability and the amount of actual damages incurred are not in dispute.

Kubota Tractor Corporation ("Kubota") hired Mitsui OSK Line Ltd. ("MOL"), an ocean shipping company, to ship thirty-two tractors from Tokyo, Japan to Swanee, Georgia. This shipment was insured by the plaintiff for $479,500. MOL issued intermodal "through" bills of lading for the shipment. Bills of lading are contracts that "record that a carrier has received goods from the party that wishes to ship them, state the terms of carriage, and serve as evidence of the contract for carriage." *Sompo II* 2006 AMC at 1818, 456 F.3d at 56 (citing *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 18, 2004 AMC 2705, 2707 (2004)). These bills covered the entire journey from start to finish, including both the ocean and the land legs of transport, and multiple modes of transportation, including ocean and rail carriage.

MOL shipped the tractors by ocean transit from Tokyo, Japan to Los Angeles, California. In Los Angeles, the tractors were transferred from MOL's ship to MOL's subcontractor, UP, for rail carriage to Georgia. The shipment was en route when the UP train carrying the cargo derailed in Texas. The tractors were severely damaged, and Kubota collected the full value of the tractors from Sompo. Sompo subrogated the claim and brought the instant suit against defendant UP.

1. As the Second Circuit has already given a thorough and complete discussion of the history and application of Carmack, Staggers, and COGSA, I will not do so here.

There is some dispute as to how the shipment was subcontracted to UP. *See Sompo II,* 2006 AMC at 1819, 456 F.3d at 56 n.3; *Sompo I,* 2004 AMC at 248, 2003 WL 22510361 at *1 n.2. What is certain is that, at some point, UP entered into an agreement with CSX Intermodal ("CSXI") to carry certain goods. UP alleges the Kubota tractors were shipped pursuant to this agreement, while Sompo and MOL dispute that they ever involved CSXI.

The three electronic waybills, separate from the bills of lading MOL issued, that UP issued to CSXI for the shipment make reference to SPD-5152. UP has a contract with CSXI, numbered SPT-5152, providing that UP's liability for loss of or damage to the lading in any container shall be subject to the released values as established by UP in UP's Circular 1000-Series and its successors. The parties dispute whether "SPD-5152" is a typo and whether or not SPT-5152 is applicable in this case.

The SP-1000-B circular was succeeded by UP Exempt Circular 20-B on January 1, 1998. Circular 20-B contains Item 142-B(3)(L), which purports to limit liability in international shipments under an intermodal or Ocean Bill of Lading to $500.00 per package. Circular 20-B also contains Items 142-B(1)(C) and 143-B, which purport to offer Carmack liability on domestic shipments originating in the United States.

## II. Standard of Review

A motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure will be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986). The moving party always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *FDIC v. Giammettei,* 34 F.3d 51, 54 (2 Cir. 1994) (citing *Celotex,* 477 U.S. at 323); *see also* Fed. R. Civ. P. 56(c). An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Jeffreys v. City of New York,* 426 F.3d 549, 553 (2 Cir. 2005) (citing *Anderson,* 477 U.S. at 248).

In deciding the motion, a court draws all reasonable inferences and resolves any ambiguities in favor of the nonmoving party. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 1962 (*per curiam*); *Donahue v. Windsor*

*Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2 Cir. 1987). Summary judgment for the moving party is appropriate ''where the nonmovant's evidence is merely colorable, conclusory, speculative, or not significantly probative.'' *Travelers Ins. Co. v. Broadway W. St. Assocs.*, 164 F.R.D. 154, 160 (S.D.N.Y. 1995) (citing *Anderson*, 477 U.S. at 248.).

''When faced with cross-motions for summary judgment, a district court is not required to grant judgment as a matter of law for one side or the other. Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'' *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2 Cir. 1993) (citations and internal quotation marks omitted). Of course, if no purported issues of fact prove to be genuine and material, then summary judgment can be properly granted.

The only issue of fact that is in controversy concerns how MOL, UP, and CSXI were involved in the contract. This dispute, while genuine, ultimately proves to be immaterial, and summary judgment can be granted as a matter of law.

### III. Discussion

As the parties have stipulated to the amount of actual damages incurred by Sompo, the sole issue remaining in this case is whether UP's liability is limited to $16,000 ($500 per parcel) or the stipulated $328,192.32 of damages that Sompo actually incurred.

Sompo advances three arguments in its renewed motion: (1) that the issue of whether UP is liable for full Carmack liability has already been litigated and is thus precluded; (2) that, in light of the Second Circuit's remand instructions in *Sompo II*, UP cannot raise new arguments about the applicability of Carmack; and (3) that the UP circular does not offer full liability pursuant to Carmack (''Carmack liability'').

UP advances two arguments in its countermotion: (1) that Carmack does not apply because UP alleges it utilized a §10709 contract; and in the alternative, (2) that UP complied with Carmack and Staggers and provided the option of full Carmack liability.

The parties' arguments are fairly distinct and do not involve any factual disputes, save for the dispute over whether UP offered full Carmack liability. As a result, the various issues are examined at the same time. The court finds that, given the decision in *Sompo II*, UP is precluded from raising new arguments about the applicability of Carmack, and there is no need to examine the issue of collateral estoppel. The court further finds that, in

addressing the mandate from the Second Circuit, UP did not comply with the provisions of Carmack and Staggers. Accordingly, UP is found to be liable for the stipulated amount of $328,192.32.

### A. It is the law of the case that Carmack governs UP's liability

#### 1. The law of the case was announced by the Second Circuit

The Second Circuit concluded that, for the rail leg of an intermodal international shipment, Carmack trumps a contractual extension of COGSA. *Sompo II*, 2006 AMC at 1845, 456 F.3d at 75. Accordingly, the Second Circuit "conclude[d] that Carmack governs Union Pacific's liability in this case." 2006 AMC at 1845, 456 F.3d at 76. This is the law of the case as given by the Second Circuit. It is determinative and it *precludes* any argument that Carmack does not govern. The panel found that only "one question remain[ed]: when Union Pacific negotiated the applicable terms of carriage of Kubota's tractors, did it provide the shipper an opportunity, consistent with Staggers, to receive full Carmack liability coverage as well as 'alternative terms'?" 2006 AMC at 1844, 456 F.3d at 75 (citations omitted).

#### 2. This finding of the law of the case is confirmed by the limited mandate given to this court

The Second Circuit issued a mandate that requires this court "to consider any other potential arguments that Union Pacific might raise that it complied with the requirements of Carmack and Staggers." 2006 AMC at 1845, 456 F.3d at 76. The panel found it "prudent to remand the case to the district court to address whether Union Pacific satisfied the requirements of 49 U.S.C. §10502(e)." 2006 AMC at 1844, 456 F.3d at 75.

"Under the doctrine of law of the case, a district court generally may not deviate from a mandate issued by an appellate court." *In re Ivan F. Boesky Securities Litigation*. 957 F.2d 65, 69 (2 Cir. 1992). "The district court's actions on remand should not be inconsistent with either the express terms or the spirit of the mandate." *Id.* "[W]here issues have been explicitly or implicitly decided on appeal, the district court is obliged, on remand, to follow the decision of the appellate court." *United States v. Minicone*, 994 F.2d 86, 89 (2 Cir. 1993); *see also Day v. Moscow*. 955 F.2d 807, 813 (2 Cir. 1992).

The Second Circuit has spoken on the issue of raising new arguments on remand: "It has become almost a judicial commonplace to say the

litigation must end somewhere, and we reiterate our firm belief that courts should not encourage the reopening of final judgments or casually permit the relitigation of litigated issues out of a friendliness to claims of unfortunate failures to put in one's best case." *United States v. Cirami*, 563 F.2d 26, 33 (2 Cir. 1977). "To determine whether an issue remains open for reconsideration on remand, the trial court should look to both the specific dictates of the remand order as well as the broader 'spirit of the mandate.' " *United States v. Ben Zvi*, 242 F.3d 89, 95 (2 Cir. 2001).

As the scope of the mandate was compliance with the requirements of 49 U.S.C. §10502(e), all other issues beyond that question were implicitly or explicitly decided on appeal. The "spirit of the mandate" is such that this court is obliged to confine itself to consider only the §10502(e) issue and nothing further.

I will, therefore, not consider any arguments against the application of Carmack. Nor is it necessary to address collateral estoppel arguments based on a decision by Judge Batts in *another* case against UP. The Second Circuit has already determined the law of *this case* in *Sompo II* and decided against UP. The only thing I will consider is what the Second Circuit told me to consider in its mandate.

### B. There was no offer of Carmack liability in the shipping documents

#### 1. The paper trail is so confusing that no reasonable shipper would have been on notice of a limitation in liability

UP alleges that the following chain of facts, inferences, and papers should have put Kubota on notice of a choice between a limitation in liability and an offer of Carmack liability contained in the UP Exempt 20-B Circular: (1) CSXI booked the inland rail carriage with UP on behalf of MOL; (2) CSXI noted at the bottom of the electronic waybills "Customer furnished contract data-SPD 005152"; (3) SPD 005152 actually referred to a contract for rail services between CSXI and Southern Pacific numbered SPT-5152; (4) Southern Pacific was merged into UP, and the contract was adopted by UP; (5) SPT-5152 makes reference to and incorporates the SP-1000 circular series; (6) at the time of the shipment, SP-1000 had been cancelled, and CSXI was on notice that it was replaced by UP Exempt Circular 20-B; (7) the 20-B circular contains Items 142-B and 143-B; (8) Items 142-B and 143-B contain terms which either limit liability to $500 per parcel under COGSA or offer Carmack liability for domestic shipments.

Contractual provisions which purport to limit a carrier's liability are enforceable only if they are (1) reasonably communicative so as to result

in a fair, open, just and reasonable agreement; and (2) offer the shipper a possibility of a higher recovery by paying a higher rate. *See Nippon Fire & Marine Ins. Co. v. Skyway Freight Systems, Inc.*, 235 F.3d 53, 59-60 (2 Cir. 2000). The chain of inferences and documents leading to any indication of liability — while not quite to the level of the "Twelve Days of Christmas," as Sompo alleges — certainly goes well beyond what is reasonable for a shipper to know when contracting for the shipment of goods. The reference to a contract is unclear and does not indicate that it limits liability merely by stating "Customer furnished contract data-SPD 005152"; the reference to a contract is incorrect, citing SPD-5152 instead of SPT-5152; the contract refers to a now-defunct circular, the 1000-Series; a new circular, UP Exempt Circular 20-B, supersedes the now-defunct circular; and the shipper was never given a copy of the CSXI-UP agreement nor was the shipper a party to this private agreement. No reasonable shipper would have known of any limitation in liability as a result of this chain.

### 2. UP did not offer Carmack liability for international shipments

UP argues that Carmack liability is offered by Item 143-B in the circular. Even if this court assumes that the circular was properly integrated into the contracts, UP has not established that it offered Carmack liability for international shipments.

UP argues that Item 143-B provides for "full value and other liability terms" under Carmack. However, Item 142-B(1)(C) explicitly limits the terms of Item 143-B to "domestic moves that originate in the United States." As UP has already argued that Item 142-B(3)(L) applies because the tractors were part of an *international shipment*, it is odd indeed for UP to turn around and allege that a purely domestic provision applies. UP cannot have its cake and eat it, too. The shipment is either part of an international shipment, or it is a domestic move. As UP has conceded that the tractors were part of an international shipment throughout its papers and motions, and UP has sidestepped the issue of 142-B(1)(C) limiting the offer of Carmack liability to domestic shipments, I must conclude that no Carmack liability was offered for the shipment in question.

### Conclusion

For the forgoing reasons, plaintiff Sompo's motion for partial summary judgment is granted, and defendant UP's motion for partial summary judgment is denied. As there are no outstanding issues, damages of $328,192.32

[2007 AMC 2218]        SOMPO v. UNION PAC.                2225

are awarded to Plaintiff. The Clerk of the Court is directed to enter judgment for plaintiff and thereafter to close the case.

This constitutes the decision and order of the Court.

———————◆———————