UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X
GREAT AMERICAN INSURANCE  :
COMPANY OF NEW YORK,
                                                                  :
       Plaintiff,
                                                                  :       07 Civ. 6421 (PAC)
  -against-
                                                                  :       <u>ORDER</u>
ADVANCE OCEAN INC., NIPPON
YUSEN KAISHA, NYK LINE (NORTH :
AMERICA) INC., BURLINGTON
NORTHERN SANTA FE CORPORATION,:
BNSF RAILWAY COMPANY, THE
BURLINGTON NORTHERN AND  :
SANTA FE RAILWAY COMPANY,
                                                                  :
       Defendants.
                                                                  :
-------------------------------------------------------X

HONORABLE PAUL A. CROTTY, United States District Judge:

Maclean Power Systems ("Maclean") contracted with rail carrier Defendants Burlington Northern Santa Fe Corporation, BNSF Railway Company, and the Burlington Northern and Santa Fe Railway Company (collectively, "BNSF") to ship certain of its products via rail from Maclean's factories in Illinois to the port of embarkation—Los Angeles, California—where co-Defendants Nippon Yusen Kaisha, and NYK Line North America (collectively, "NYK") and Advance Ocean, Inc. ("Advance Ocean") were to provide for the maritime portion of the shipment to the cargo's ultimate destination in Thailand.[1] On July 18, 2006, Maclean's products were damaged in a train derailment in Kansas. Maclean's insurer, Great American Insurance Company of New York, paid for the damaged goods and was subrogated to Maclean's claims. The Insurance Company ("Great American" or "Plaintiff"), which is located in New York,

---

[1] NYK was the ocean carrier for the shipment and Advance Ocean was the non-vessel operating common carrier (the "NVOCC"). NVOCC's are "freight-forwarders" or logistical intermediaries—they book bulk space on ocean carriers, pay a bulk rate, and then subdivide the space and sell it in smaller quantities to other entities.

instituted this action and laid venue in New York. Plaintiff brings this action pursuant to the so-called "Carmack Amendment," 49 U.S.C. § 11706, which governs the liability of rail carriers. Defendants BNSF and NYK now move to transfer venue. For the reasons set forth below, the motion to transfer is granted. The case will be transferred to the Northern District of Illinois.[2]

## SUMMARY OF FACTS

Defendant BNSF was the rail carrier in possession of Maclean's goods at the time of derailment. BNSF has its principal place of business in Fort Worth, Texas, and has no routes in New York. Maclean is headquartered in Franklin Park, Illinois, and its shipping contract with BNSF was signed in Chicago. As part of the contract, Maclean agreed to be bound by BNSF's "Intermodal Rules & Policies Guide" (the "Intermodal Rules"), the policies governing its shipping contracts. Item 65(4) of the Intermodal Rules is a forum selection clause which requires that any suits against BNSF arising from a shipment of goods be brought at either the shipment's origination or termination point. Here, the train originated in Ellwood, Illinois and would have terminated in Los Angeles, California but for its derailment in Neosho Rapids, Kansas. Great American Insurance Company is located in New York, and the claim at issue in this suit was adjusted in New York, but Maclean's relevant witnesses are all located in Illinois.

## DISCUSSION

**I.      The Carmack Amendment**

In 1906, "in an effort to create a national scheme of carrier liability for goods damaged or lost during interstate shipment," Congress amended the Interstate Commerce Act of 1887 to add the "Carmack Amendment." See Sompo Japan Ins. v. Union Pac., 456 F.3d 54, 58 (2d Cir. 2006) (quotations and citations omitted). The Carmack Amendment—codified at 49 U.S.C. §11706—"'imposes something close to strict liability upon originating and delivering rail

---

[2] Defendant Advance Ocean, Inc. ("Advance Ocean") also moves to dismiss for failure to state a claim and/or lack of personal jurisdiction. In light of the Court's decision to transfer the case, it declines to decide the motion to dismiss, which is transferred to the new venue.

carriers.'" Id. at 59 (quoting Rankin v. Allstate Ins. Co., 336 F.3d 8, 9 (1st Cir. 2003)). Where it applies, the Carmack Amendment provides the exclusive remedy for a shipper to recover damages from a rail carrier for loss or damage of cargo during shipment. See Am. Rock Salt v. Norfolk S., 387 F. Supp. 2d 197, 200 (W.D.N.Y. 2005) (citing Cleveland v. Beltman N. Am. Co., 30 F.3d 373, 380-81 (2d Cir. 1994)).

Section 11706(d)(2)(A) of the Carmack Amendment contains a special venue provision which restricts venue in actions against rail carriers. 49 U.S.C. § 11706(d)(2)(A).[3] The law is clear that where a restrictive special venue provision applies, a "court may . . . not allow the cause of action to be brought outside the district provided by Congress." Michael v. Thompson, No. 07 Civ. 838 (DRH), 2007 WL 4390342, at *3 n.5 (S.D. Ill. Dec. 14, 2007). In this case, Plaintiff brought the action in the Southern District of New York which is obviously not one of the enumerated districts permitted by the statute. As such, the Southern District of New York is an improper venue for this action.

The Carmack Amendment's special venue provision is restrictive and mandatory and is designed for the protection of the carrier. The Southern District of New York is clearly the wrong venue, and accordingly, the Court treats Defendants' motion to change venue under 28 U.S.C. § 1404 as a motion to cure a venue defect under 28 U.S.C. § 1406(a). Section 1406(a) states that where venue has been laid in the wrong district, a court is permitted to transfer the case "to any district . . . in which it could have been brought." 28 U.S.C. § 1406(a). Here, the statute calls for venue in either the Northern District of Illinois or the Central District of California. Given that the damaged cargo originated in Illinois, the owner of the cargo is an

---

[3] "A civil action under this section may only be brought: (i) against the originating rail carrier, in the judicial district in which the point of origin is located; (ii) against the delivering rail carrier, in the judicial district in which the principal place of business of the person bringing the action is located if the delivering carrier operates a railroad or a route through such judicial district, or in the judicial district in which the point of destination is located; and (iii) against the carrier alleged to have caused the loss or damages, in the judicial district in which such loss or damage is alleged to have occurred." 49 U.S.C. §11706(d)(2)(A) (emphasis added).

3

Illinois company, several of the necessary witnesses are in Illinois, and the relevant contracts were signed there, the Court finds that Illinois is the proper venue for this action.

Plaintiff argues that BNSF's affirmative defense of improper venue was waived because it was not raised, as required, in BNSF's first responsive pleading to the complaint. See Fed. R. Civ. P. 12(h)(3) and 8(c); (Plaintiff's Memorandum ("Pl. Mem.") at 5-8.). The Court finds that the defense was not waived. It was raised in co-Defendant NYK's answer, and therefore, Plaintiff had notice that venue was improper. See LPR, SRL v. Challenger Overseas, LLC, No. 99 Civ. 8883 (JGK), 2000 WL 973748, at *6 (S.D.N.Y. July 13, 2000) (finding that the core purpose of the waiver doctrine is "to act as a safeguard against surprise and unfair prejudice" to the Plaintiff (quotations and citations omitted)); see also Schwind v. EW & Assocs., 357 F. Supp. 2d 691, 697 (S.D.N.Y. 2005) ("The purpose of requiring affirmative defenses to be pleaded in the answer is 'to notify a party of the existence of certain issues.'" (quoting Doubleday & Co. Inc. v. Curtis, 763 F.2d 495, 503 (2d Cir. 1985))); see also U.S. v. Cont'l Ill. Nat'l Bank and Trust, 889 F.2d 1248, 1255 (2d Cir. 1989) ("[O]ne of the main reasons for the rule stated in Fed. R. Civ. P. 8(c) is to avoid surprise to the plaintiff"). In any event, the Court treats BNSF's motion to transfer as a motion to amend to include the defense, reaches its merits, and transfers the case. See Schwind, 357 F. Supp. 2d at 698 ("'[w]here an affirmative defense is asserted for the first time in support of a defendant's motion for summary judgment, a court may construe the summary judgment motion as a motion to amend the answer, and granting summary judgment permits such an amendment de facto.'" (quoting Levy v. Kosher Overseers Assn. of Am., Inc., No. 92 Civ. 8377, 2000 WL 294842 (DLC), at *7 (S.D.N.Y. Mar. 21, 2000))).[4]

---

[4] Plaintiff also includes a cursory, one-sentence objection to Defendants' motion on the grounds that Defendants failed to support the motion with an affidavit alleging personal facts. (Pl. Mem. at 2.) Plaintiff failed, however, to support this objection with case law or argument, and the Court dismisses the objection as unsupported and unfounded.

## II.     The Intermodal Rules

Even if the Carmack Amendment's restrictive venue provision did not apply here, the Southern District of New York would still be an improper venue by operation of BNSF's Intermodal Rules.  (See Intermodal Rules, Yao Decl., Ex. E at 74, Item 65(4).)  Item 65(4) of BNSF's Intermodal Rules is a forum selection clause which calls for any actions against BNSF to be brought "in the location of the shipment's origination or termination on BNSF." (Yao Decl., Ex. E at 74, Item 65(4).)  Here, the shipment originated in Illinois and terminated in California.  It is apparent, therefore, that the Southern District of New York is an improper venue under the Intermodal Rules.  According to the Supreme Court, such forum selection clauses "should receive neither dispositive consideration . . . nor no consideration . . . but rather the consideration for which Congress provided in [the change of venue provision.]"  Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 31 (1988).  Viewing the clause in this manner, the Court finds that the Intermodal Rules provide another indication that the Southern District of New York is not the appropriate venue for this action.

## III.    Change of Venue

Setting aside the controlling law and the relevant facts, and assuming that the Court must conduct the traditional multi-factored change of venue analysis under 28 U.S.C. § 1404, venue would still lie in Illinois.  The claim here is a subrogated one.  The claim that Great American brings is essentially Maclean's claim, not its own, and Maclean is headquartered in Illinois, the shipping contract was signed in Illinois, the cargo originated in Illinois, and Maclean's witnesses are located in Illinois, among other factors favoring Illinois.  Virtually all of the evidence relevant to the adjudication of the claim is sited in Illinois, and the underlying forum selection clause dictates Illinois as the proper venue—not to mention the fact that the location of

5

derailment (Kansas) is far closer to Illinois than to either New York or California.[5] The only viable connection to New York is Plaintiff's location, a fact which would be wholly irrelevant if the claim were not subrogated. Plaintiff is a large corporate entity who elected to do business with Maclean in Illinois and who has the means to litigate there; transfer to Illinois does not create an unfavorable balance for one party or another. Therefore, even an analysis of the multi-factored venue test indicates that Illinois is the proper venue.[6]

Finally, where, as here, the insurer has already paid a claim, the subrogated nature of the suit still remains, and equitable principles dictate that an insurance company cannot stand in a better position than its insured. See U.S. v. California, 507 U.S. 746, 756 (1993) ("When proceeding by subrogation, the subrogee 'stands in the place of one whose claim he has paid.'") (quoting U.S. v. Munsey Trust Co., 332 U.S. 234, 242 (1947)); Nipponkoa Ins. Co., Ltd. v. Watkins Motor Lines, Inc., 431 F. Supp. 2d 411, 414 (S.D.N.Y. 2006) (stating, with respect to a subrogated Carmack Amendment claim, "an insurer in its role as subrogee has no greater rights than those possessed by its insured, and its claims are subject to the same defenses." (quotations and citations omitted)). There is no good reason why these statements are not applicable to venue selection. Under these circumstances, a review of both the venue factors and equitable principles dictates that the Court transfer the case to Illinois.

## CONCLUSION

Defendants BNSF and NYK's motion to transfer is GRANTED. After consideration of the Carmack Amendment's special venue provision, and an analysis of the multi-factor venue

---

[5] According to Google Maps, Neosho Rapids, Kansas is 1,583 miles from Los Angeles, California, 1,290 miles from New York, New York, and only 627 miles from Chicago, Illinois.

[6] Some of the factors a district court should consider when deciding whether to change venue pursuant to § 1404 are, inter alia: (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, (7) a forum's familiarity with governing law, and (8) the relative means of the parties. See D. H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 106-07 (2d Cir. 2006); Cartier v. D & D Jewelry Imports, 510 F. Supp. 2d 344, 346 (S.D.N.Y. 2007).

test, the Court exercises its broad discretion to change the venue of this case. The case is transferred to the Northern District of Illinois. The Clerk of Court is directed to terminate this motion and transfer the case. All other pending matters shall be transferred to Illinois.

Dated: New York, New York
July 7, 2008

SO ORDERED

*[signature]*

PAUL A. CROTTY
United States District Judge

7